# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN KITCHEN DELIGHTS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 16-CV-08701 ) ) Judge John J. Tharp, Jr. |
| SIGNATURE FOODS, LLC | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

After investing heavily in special equipment and packaging to produce customized frozen pizzas for the defendant Signature Pack, LLC[1] ("Signature"), plaintiff American Kitchen Delights, Inc. ("American Kitchen") filed this lawsuit alleging that Signature failed to purchase frozen pizzas as it had promised to do so and claiming more than $800,000 in damages. The complaint alleges breach of contract and other common law claims, all of which Signature moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Although the allegations of the complaint leave many unanswered questions, the Court concludes that American Kitchen has alleged sufficient facts to state a claim against Signature and therefore denies the motion to dismiss.

---

[1] In its amended complaint, American Kitchen Delights, Inc. identified the defendant as "Signature Foods, LLC." Am. Comp., ECF No. 13. Signature states in its motion to dismiss that it was incorrectly sued as "Signature Foods, LLC" and its proper name is "Signature Pack, LLC." The motion to dismiss is not predicated upon this misidentification, and the plaintiff does not dispute it, so for purposes of this opinion, the Court assumes the defendant's correction is accurate.

## BACKGROUND[2]

American Kitchen is an Illinois corporation with its principal place of business in Harvey, Illinois. Signature is a Georgia limited liability corporation located in North Pendergrass, Georgia.[3] The other players central to this story are Scott Ashby and Mike Zimmer; the nature of their relationship with the parties is a pivotal issue. According to the complaint, Ashby and Zimmer are "third-party brokers" who contacted American Kitchen in 2014 "on behalf of" Signature to discuss the production of frozen pizzas "specifically tailored" for Signature. Am. Compl. ¶ 9, ECF No. 13. Ashby, at least, was affiliated with a company known as "Brand Concessions," *id.* at Ex. 1, though the complaint sheds no light at all on the nature of that entity. Upon Ashby's request, American Kitchen created samples of frozen pizzas for evaluation, first by Ashby, and then by Signature. The complaint alleges that on May 22, 2014, Ashby, acting as an agent for Signature, submitted a formal offer to American Kitchen for the production of frozen pizzas in exchange for payment from Signature. Ashby subsequently requested that American Kitchen provide for Signature certain information about the frozen pizzas, including "specs" for the samples it had produced and a "cost out." *Id.* ¶¶ 13-17. In August 2014, Ashby asked American Kitchen to make significant changes to the frozen pizzas produced for Signature.

On August 26, 2014, Ashby sent American Kitchen, via email, a draft letter of understanding ("LOU"). The email from Ashby is addressed to Shahnawaz Hasan—apparently an employee of American Kitchen, though the complaint does not identify him—at "shasan.akdi@gmail.com" and states, "Please review below and let me know of any concerns.

---

[2] On a motion to dismiss, the court accepts all well-pleaded facts in the complaint as true. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826-27 (7th Cir. 2015).

[3] Jurisdiction is premised upon diversity. 28 U.S.C. § 1332. Signature's members are all citizens of Georgia. See Notice of Removal ¶¶ 7-11, ECF No. 1.

Thanks." *Id.* Ex. 1. The draft LOU, which is directed to "Chuck" (presumably Chuck Mcatee, Signature's president), is included in the email. *Id.* The LOU states that American Kitchen has agreed to sell three different pizza products at specific prices: an eight-pack three-inch pizza at $2.05 per unit, a four-pack five-inch deep dish pizza at $2.05 per unit, and an individually-wrapped five-inch deep dish pizza at $0.52. The LOU also states that American Kitchen "would agree" to a specific production schedule: an initial order within the first 30 days and at least six truckloads during the next 90 days. *Id.* Thereafter, the document states, American Kitchen "would expect" to ship at least 90,000 and up to 250,000 cases of product on an annualized basis, though the LOU contains no term defining the term of the relationship. *Id.* The LOU also states that American Kitchen will agree not to sell any pizza products to any "Pick 5 competitors" and will agree not to sell the individually wrapped pizza product for use in certain stores and products. *Id.* It further states that both parties "would agree" that the intention is "to move 100% of the production to American Kitchen." *Id.* Hasan responded to Ashby's email with two items to add to the LOU: "specs" for the products and pricing for the meats and cheeses. *Id.*

The complaint alleges that American Kitchen and Signature "finalized and agreed up" the LOU. *Id.* ¶¶ 21-22. The companies then took steps to begin the manufacture and distribution of the frozen pizzas pursuant to the LOU. American Kitchen invested $90,000 in equipment—including three ovens, a waterfall sauce dispenser, new pipes, a nitrogen tunnel, various sized pizza dies, dough equipment, and other electrical, water, and gas parts—to produce the customized frozen pizzas for Signature. In addition, Signature directed American Kitchen to order customized pizza labels from a specific company. American Kitchen complied with the request and ordered a total of 300,000 Signature labels for pepperoni and supreme pizzas. Signature also required customized packaging to reflect its brand and provided American

3

Kitchen with the specifications for its special packaging. American Kitchen ordered more than $70,000 in proprietary packaging, labels, and other raw materials to produce Signature's customized frozen pizzas.

In October 2014, Ashby provided American Kitchen with Signature's projected sales of frozen pizzas, which Ashby received from Signature. On January 7, 2015, Signature placed an order with American Kitchen for pepperoni and supreme pizzas totaling $42,301.44. For reasons unexplained, however, Signature's next order came nine months later, in September, when Signature placed another order with American Kitchen for pepperoni pizzas totaling $5,904.00. A few days later, on September 15, 2015, Zimmer and Signature's president, Chuck Mcatee, visited American Kitchen's facility to observe the pizza production process. Mcatee told American Kitchen "we love the product and everything is great" and stated "orders will be coming in." *Id.* ¶ 51. Mcatee also said that Signature would like to continue its business relationship as outlined in the LOU. In November 2015, Ashby told American Kitchen that an order would be placed in December and "then we should be off and running." *Id.* ¶ 53. Signature, however, did not place any further orders with American Kitchen.

American Kitchen says that it expected business profits of more than $650,000 from its frozen pizza agreement with Signature, which it lost because it did not receive "the exclusive manufacturing business" that Signature agreed to provide. *Id.* ¶¶ 62-63. It also claims to have lost business opportunities as a result of its agreement not to sell pizza products to certain competitors or stores. *Id.* ¶ 61. American Kitchen purchased equipment, labels, packaging, and raw materials that were specialized for Signature's requested product that cannot be used for other operations. *Id.* ¶¶ 55, 60.

**DISCUSSION**

To survive a motion to dismiss, a complaint need only provide a "short and plain statement of the claim" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all inferences in the plaintiff's favor. *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289-90 (7th Cir. 2016).

In assessing whether a complaint states a plausible "claim," it is important to acknowledge that a claim and a legal theory of liability are not one and the same. A plaintiff is required to plead "claims," which are grievances. *Rapid Test Prods., Inc. v. Durham Sch. Servs., Inc.*, 460 F.3d 859, 861 (7th Cir. 2006). A claim is "the aggregate of operative facts which give rise to a right enforceable in the courts." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012). In setting forth a plausible claim, a plaintiff is not required to plead legal theories. *Frank v. Walker*, 819 F.3d 384, 387-88 (7th Cir. 2016). "A complaint should limn the grievance and demand relief. It need not identify the law on which the claim rests, and different legal theories therefore do not multiply the number of claims for relief. One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate." *NAACP v. Am.*

*Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992). Accordingly, a plaintiff who has multiple legal theories or seeks different kinds of relief based on the same set of facts may, but need not structure his complaint with one count for each theory or type of relief. *Frank*, 819 F.3d at 387-88; *Sojka*, 686 F.3d at 399. And because plaintiffs are not required to identify legal theories in their complaint, "it follows that specifying an incorrect theory is not fatal." *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 996 (N.D. Ill. 2013); *see also Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011). In short, the pleadings are not the stage of the litigation when specific legal theories must be identified and their viability established; legal theories may be learned and developed during discovery. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 561 (7th Cir. 2011). A motion to dismiss a complaint for failure to state a claim should only be granted "when the facts in the plaintiff's complaint, taken as true, do not state a plausible claim under **any** recognized legal theory." *Volling*, 999 F. Supp. 2d at 996 (emphasis in original; internal quotation marks omitted).

It follows from the foregoing that a complaint is not required to allege facts that, if true, definitively establish a defendant's liability, nor need it identify specific legal theories on which liability would be based. A complaint need only allege facts sufficient to give rise to a plausible inference that the defendant caused an injury to the plaintiff for which there is some legal or equitable remedy available. American Kitchen's amended complaint asserts a single claim against Signature arising from the facts pertaining to the pretermitted pizza project. The gist of the claim is simply that American Kitchen invested a great deal of money and effort to produce custom pizzas to Signature's specifications understanding that Signature would order substantial

quantities. It did not do so, and American Kitchen assets that Signature is liable for American Kitchen's resulting losses.

This states a plausible claim for relief, without regard to the identification of a specific legal theory at this juncture. The allegations of the complaint plausibly establish that there was a significant relationship between the companies with respect to this venture that supports a claim that Signature bears some legal responsibility to American Kitchen, whether under a breach of contract theory or some other quasi-contractual theory, for causing American Kitchen's losses. Nevertheless, the complaint alleges four separate and enumerated counts against Signature, each based on a distinct theory of liability—equitable estoppel (count I), quantum meruit (count II), breach of contract (count III), and promissory estoppel (count IV). Signature moves to dismiss each count under Rule 12(b)(6) for failure to state a claim, but the complaint survives if the facts alleged plausibly entitle American Kitchen to legal relief under any theory, even if not one expressly identified in the complaint. *See Frank*, 819 F.3d at 387-88.; *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1002 (N.D. Ill. 2017). To prevail on its motion, Signature must establish that none of the legal theories American Kitchen has advanced, or any other, plausibly establishes a right to recover damages from Signature for the injuries American Kitchen has allegedly suffered. *See Liston*, 254 F. Supp. 3d at 1002.

### I. Agency Allegations

Signature first argues that American Kitchen's complaint should be dismissed because each theory of relief depends on what it deems to be a conclusory allegation that Ashby and Zimmer were acting as Signature's agents when pursuing the pizza project. Signature asserts that the complaint does not allege sufficient facts to show that Ashby and Zimmer were actual or apparent agents of Signature. Specifically, Signature argues that the complaint fails to allege that

Signature authorized Ashby or Zimmer to contact or speak with American Kitchen on Signature's behalf, nor does it allege that Signature controlled or had the right to control the conduct of Ashby or Zimmer. Signature further claims that the complaint fails to show Signature acted in a manner that would lead a reasonable person to conclude Ashby or Zimmer were its agents.

"Agency is a fiduciary relationship in which the agent has the power to act on the principal's behalf." *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 672 (7th Cir. 2004) (citing *Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.*, 759 N.E.2d 174, 181 (Ill. App. Ct. 2001)). The test of agency is whether the principal can control the method or manner of accomplishing a task by the alleged agent, as well as whether the agent has the ability to subject the principal to liability. *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1024 (N.D. Ill. 2008) (citing *Williams v. Ford Motor Co.*, 990 F. Supp. 551, 554 (N.D. Ill. 1997)). In an agency relationship, a principal can be legally bound by its agent's action if the principal conferred actual authority on the agent. *Curto v. Illini Manors, Inc.*, 940 N.E.2d 229, 233 (Ill. App. Ct. 2010). Actual authority may be express or implied. *Id.* In absence of actual authority, a principal can be bound by the acts of a purported agent under apparent authority if the principal created a reasonable impression to a third party that the agent had the authority to perform a given act. *Id.* at 235. A principal may also be bound through ratification of an agent's conduct, which occurs if the principal learns of an unauthorized transaction and retains the benefits of the transaction or takes a position inconsistent with non-affirmation. *Progress Printing Corp. v. Jane Byrne Political Comm.*, 601 N.E.2d 1055, 1067 (Ill. App. Ct. 1992).

To sufficiently allege the existence of an agency relationship, a plaintiff must plead more than a conclusory statement that such an agency relationship exists. *Sefton v. Toyota Motor Sales*

*U.S.A.*, No. 09 C 3787, 2010 WL 1506709, at *3 (N.D. Ill. Apr. 14, 2010). At the pleading stage, however, a generalized factual predicate that supports the inference of agency will suffice. *Rand Bond of N. Am., Inc. v. Saul Stone & Co.*, 726 F. Supp. 684, 687 (N.D. Ill. 1989). The existence of an agency relationship is a fact-intensive inquiry that is generally best evaluated after discovery. *Gaudie v. Countrywide Home Loans, Inc.*, 683 F. Supp. 2d 750, 757 (N.D. Ill. 2010). A plaintiff cannot reasonably be expected to allege specific details concerning the manner of the defendant's control because "such a burden would require [the plaintiff] to have access to [the defendant's and the agent's] business records before discovery." *Vertex Ref., NV, LLC v. Nat'l Union Fire Ins., Co. of Pittsburgh, PA*, No. 16 CV 3498, 2017 WL 977000, at *3-4 (N.D. Ill. Mar. 14, 2017).

Here, the complaint adequately alleges facts that give rise to a plausible inference that Ashby and Zimmer were acting as Signature's agents. American Kitchen alleged that Ashby and Zimmer contacted American Kitchen "on behalf of" Signature and began discussions and negotiations with American Kitchen about manufacturing frozen pizzas for delivery to Signature. Their subsequent actions are consistent with their characterization by American Kitchen as "agents" for Signature. The complaint, for example, expressly alleges that Ashby requested sample frozen pizzas for Signature to evaluate and made several requests for information for Signature—including "specs" for the sample frozen pizzas, a "cost out" for the frozen pizzas, and "other information relating to the frozen pizzas." Am. Compl. ¶¶ 10, 13, 15, 17. Furthermore, and contrary to Signature's argument, the complaint does contain allegations that permit a reasonable inference that Signature knew of and approved of Ashby and Zimmer's actions on its behalf. American Kitchen claims, for example, that Ashby provided it with Signature's projected frozen pizzas sales, which Ashby received from Signature. It further

alleges that after the LOU was created, Signature directed American Kitchen to order Signature's customized labels from a specific company and provided American Kitchen with the specifications for its customized packaging. Signature's subsequent placement of, and payment for, two substantial orders with American Kitchen and the statement attributed to Chuck Mcatee, Signature's president, during a visit to American Kitchen's production facility, with Zimmer, to the effect that Signature would like to continue its business relationship with American Kitchen as outlined in the LOU similarly permit an inference of ratification and approval of Ashby and Zimmer's efforts. Based on these allegations, which the Court must accept as true and construe in the light most favorable to American Kitchen, the Court can plausibly infer that Ashby and Zimmer's conduct in coordinating the frozen pizza agreement was under the authority and control of Signature.

The allegations of the complaint, to be sure, do not definitively establish that Ashby and Zimmer were working as agents on behalf of Signature. Perhaps they were independent of both parties and had their own interest in forging an agreement between American Kitchen and Signature. The amended complaint doesn't foreclose that possibility, and even provides a basis for the suggestion in attaching the pizza specifications American Kitchen supplied, which refer not to "Signature" pizzas, but to "Scott's 5" Signature Pepperoni Pizza" and "Brand Concessions 3" Sausage, Pepperoni & Peppers" pizzas. Pl.'s Resp., Ex. 2 at 1-4, ECF No. 24-2. Signature also points to the email draft LOU and asks why, if Ashby were an agent for Signature, he would be providing a draft LOU to American Kitchen to send to his principal, rather than the other way around. These anomalies are not necessarily inconsistent with the claim that Ashby was Signature's agent, however, and in any event a complaint need not negate the possibility of alternative explanations. What matters for the viability of the complaint is whether there is a

plausible inference to support the asserted claim(s). Here, the facts alleged permit the reasonable inference that in communicating about the pizza project with American Kitchen, Ashby and Zimmer[4] were working as agents of Signature. *See Vertex Ref., NV, LLC*, 2017 WL 977000, at *3-4 (plaintiff's factual allegations sufficiently alleged agency relationship because plaintiff identified activities that alleged agent performed on defendant's behalf, under defendant's control).

## II. Breach of Contract

Under Illinois law, to state a claim for breach of contract, a plaintiff must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent and Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004). For purposes of this motion, only the first element is disputed. Signature argues that American Kitchen's breach of contract count should be dismissed because American Kitchen has failed to sufficiently allege the existence of a contract. Signature asserts that no contract exists because it cannot be bound by an LOU that it never signed, that the terms of the LOU are too vague and incomplete to constitute an enforceable contract, and that even if sufficiently definite the LOU cannot be enforced by virtue of the Statute of Frauds.[5] The Statute of Frauds, of course, is an affirmative defense and a motion to dismiss on that basis can be granted only if it is plain from the face of the complaint that the defense is meritorious. *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir.

---

[4] The amended complaint focuses primarily on Ashby's conduct and includes very few factual allegations regarding Zimmer's actions. The Court finds, however, that taken as a whole, the allegations in the amended complaint allow a reasonable inference that Ashby and Zimmer worked together as agents of Signature.

[5] In its Reply brief, Signature argues that the "LOU" constitutes, "at best," a price quote rather than an offer, but in its opening brief it did not advance that argument. Def.'s Reply in Supp. of Mot. to Dismiss 8, ECF No. 25.

2016). A plaintiff "need not anticipate and attempt to plead around affirmative defenses," which often turn on facts not before the court at the pleading stage. *Id.*

Signature's argument that it cannot be bound by an unsigned LOU is unconvincing. Under Illinois law, "[i]t is well settled that a party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it." *Asset Recovery Contracting, LLC v. Walsh Const. Co. of Ill.*, 980 N.E.2d 708, 724 (Ill. App. Ct. 2012). American Kitchen alleges that Signature agreed to the terms of the LOU and took steps to begin performance of those terms, including directing American Kitchen to purchase pizza labels and packaging customized for Signature, submitting and paying for two orders of frozen pizzas, and visiting American Kitchen's production facility. These facts are adequate to support a plausible claim that Signature, by its conduct, entered into a binding contract with American Kitchen. Furthermore, as previously discussed, the Court finds that American Kitchen has pleaded enough facts to plausibly allege an agency relationship between Ashby and Signature, or a ratification by Signature of Ashby's conduct and the LOU. *See supra* Section I. Under Illinois law, an agent may bind his principal to a contract where he had actual or apparent authority to do so. *Bull v. Mitchell*, 448 N.E.2d 1016, 1023 (Ill. App. Ct. 1983). Even if an agent lacked authority to enter into a contract on behalf of his principal, the principal may nonetheless be bound if he ratified the contract. *Id.* The complaint's allegations, therefore, are also adequate to support a claim that Signature became bound to the terms of the LOU based on the conduct of its alleged agents.

Signature also argues that the terms of the alleged agreement between Signature and American Kitchen are too vague and ambiguous to be enforceable as a contract. To be enforceable, a contract must be "sufficiently definite so that its terms are reasonably certain and

able to be determined." *DiLorenzo v. Valve and Primer Corp.*, 807 N.E.2d 673, 678 (Ill. App. Ct. 2004). Signature maintains that the LOU lacks definiteness because it does not include the following details: a protocol for the fluctuating prices of cheeses and meats, a quantity for the "initial order" to be placed within the first 30 days, measurements for a "truckload," specifications for the contents of the shipments beyond the four-month window, timing for when 100% of the production would shift to American Kitchen, "specs for the products," and a packaging agreement that is referenced in the LOU. Def.'s Mot. to Dismiss Am. Compl. 11-12, ECF No. 18.

These missing details do not necessarily render the alleged agreement too indefinite to be a valid contract. "A contract may be enforced even though some contract terms may be missing or left to be agreed upon." *DiLorenzo*, 807 N.E.2d at 678. If, however, the contract's essential terms are "so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Id.* The terms of the LOU, if agreed to by Signature as American Kitchen alleges, provide specific products and minimum quantities that Signature was to purchase from American Kitchen at specific prices.[6] Some of the terms (*e.g.,* "truckload") may have been ambiguous, but those terms plausibly had meaning to the parties that can be fleshed out by parol evidence. The terms also require that American Kitchen refrain from selling certain pizza products to other customers. The Court, therefore, cannot find at this stage of the litigation that the terms of the purported contract are so uncertain that American Kitchen has failed to plausibly allege the existence of a valid and enforceable contract.

---

[6] Although much of the language in the LOU appears to be non-binding, American Kitchen alleges that the LOU was "finalized" and the terms were agreed to by Signature. Am. Compl. ¶¶ 21-22, ECF No. 13.

Furthermore, Signature's Statute of Frauds arguments do not warrant a conclusion, based on the face of the complaint, that the agreement between American Kitchen and Signature is unenforceable. Signature asserts that because the LOU is not signed, it does not meet the writing requirements set forth in two Illinois statutes. *Id.* Illinois law requires that an agreement that cannot be fully performed within one year, or that is for the sale of goods for the price of $500 or more, be in writing and signed by the party against whom enforcement is sought (or his authorized agent). 740 ILL. COMP. STAT. 80/1; 810 ILL. COMP. STAT. 5/2-201. The writing, however, is not itself required to be a valid contract—it simply needs to be evidence of a valid contract and its essential terms. *See Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 295 (7th Cir. 2002); *Benefit Vision Inc. v. Conseco Life Ins. Co.*, No. 12 C 3025, 2014 WL 5614711, at *7 (N.D. Ill. Nov. 3, 2014) (quoting *Crawley v. Hathaway*, 721 N.E.2d 1208, 1211 (Ill. App. Ct. 1999)). Furthermore, the signature required by the statute of frauds need not be handwritten, and a sender's name on an email may be sufficient to satisfy the requirement. *Cloud Corp.*, 314 F.3d at 295-96. *See also Benefit Vision Inc.*, 2014 WL 5614711 at *7.

Here, the complaint attaches as an exhibit a copy of the LOU—a writing that American Kitchen alleges shows the existence and the essential terms of an agreement between American Kitchen and Signature. Am. Compl. ¶¶ 19, 21, Ex. A. American Kitchen asserts that the LOU meets the signature requirement of the statute of frauds because Ashby's electronic signature appears on the August 26, 2014 email. In addition, the complaint allegations indicate that an exception to the statue of frauds for specially manufactured goods might apply in this case. *See* 810 ILL. COMP. STAT. 5/2-201(3). In light of these facts, the Court cannot dismiss the breach of contract claim based on the statute of frauds. *See Russo v. Bank of Am., N.A.*, No. 14 CV 382, 2014 WL 3811116, at *3 (N.D. Ill. Aug. 1, 2014) (denying motion to dismiss based on statute of

frauds where complaint did not set forth all the ingredients of an impenetrable defense); *Eastek Int'l Corp. v. Ingersoll-Rand Co.*, No. 10-C-3305, 2010 WL 4790912, at *2 (N.D. Ill. Nov. 16, 2010) (denying motion to dismiss based on statute of frauds where exceptions to the statute of frauds appeared to be applicable).

American Kitchen also asserts that 740 ILCS 80/1 does not apply to the agreement because it could have been performed within one year.[7] That seems right—the LOU does not appear to contain any minimum term beyond the four month "rollout" schedule—but it is not necessary to resolve that question definitively because whether a promise can be performed within one calendar year is "a question of fact best left for summary judgment." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 923 (N.D. Ill. 2016). The Court, therefore, will not attempt to decide the issue at this early stage in the litigation.

### III. Additional Theories of Relief

In addition to its breach of contract claim, American Kitchen includes in its complaint three other counts that set forth alternative theories of relief—promissory estoppel, quantum meruit, and equitable estoppel—all of which are premised on the same alleged conduct as the breach of contract claim. Signature argues that each of these counts should be dismissed because

---

[7] American Kitchen also argues that 810 ILCS 5/2-201 does not apply because the predominate purpose of the contract was for the service of manufacturing products, not the sale of goods. 810 ILCS 5/2-201 applies only to "transactions in goods" and defines "goods" as "all things including specially manufactured goods, which are movable at the time of identification to the contract for sale." 810 ILL. COMP. STAT. 5/2-105. "Where there is a mixed contract for goods and services, there is a 'transaction in goods' only if the contract is predominantly for goods and incidentally for services." *Brandt v. Boston Sci. Corp.*, 792 N.E.2d 296, 299 (Ill. 2003). Even where the services required to produce a good—such as engineering, design, and installation— are significant, the predominate purpose of the contract may still be the sale of goods. *See Republic Steel Corp. v. Penn. Eng'g Corp.*, 785 F.2d 174, 181-82 (7th Cir. 1986). Here, the LOU overwhelmingly refers to the sale of a good—frozen pizzas. It discusses the size, pricing, and quantity of frozen pizzas to be produced, ordered, and delivered. Accordingly, the Court finds that the predominate purpose of the alleged contract is for the sale of goods and not services.

the complaint fails to plead sufficient facts in support of each theory. As explained at the outset of this discussion, however, the Court need not parse through each of these alternative theories at this juncture to determine their viability. These are fact-intensive theories and the evaluation of such theories can be considered after there has been an opportunity to refine and test the theories during discovery. Further, conducting discovery with respect to these claims will not materially enlarge the scope of discovery required, for the simple reason that all of American Kitchen's theories arise from the same set of facts relating to the interactions between the companies in furtherance of the pizza project. For the same reason, dismissing any of these theories would not streamline discovery. The complaint would still survive and discovery concerning the pizza project would still go forward. If, when discovery ends, there is an argument to be made that one or more legal theories the plaintiff intends to advance are, on the basis of undisputed material facts, infirm as a matter of law, it will be open at that point for the defendant to make an appropriate motion addressed to limiting arguments that may be advanced at trial (motions in limine, for example, or motions relating to jury instructions).

Finally, a word about Signature's argument that the counts asserting promissory estoppel and quantum meruit must be dismissed because they are inconsistent with American Kitchen's allegation that a valid contract exists. It is of course true that under Illinois law (and probably just about anywhere else), a plaintiff cannot recover on a quantum meruit or a promissory estoppel theory where a contract is found to exist. *See Langone v. Miller*, 631 F. Supp. 2d 1067, 1071 (N.D. Ill. July 6, 2009); *Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1080 (N.D. Ill. 2015). According to the complaint, however, the quasi-contract claims are based on the possibility that no contract is found to have existed between American Kitchen and Signature. The Federal Rules of Civil Procedure permit parties to plead inconsistent claims in the alternative; "there's no

rule against inconsistent pleadings in different suits, or for that matter a single suit." *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 597 (7th Cir. 2012); *Wabash Casting, Inc. v. Fuji Machine Am. Corp.*, No. 16 C 3629, 2016 WL 4765717, at *2 (N.D. Ill. Apr. 3, 2012). A plaintiff, therefore, can plead breach of contract and quasi-contract theories in the alternative even though it cannot ultimately recover under both. *Wabash Casting, Inc.*, 2016 WL 4765717, at *2. It is not necessary to take action now to avoid that possibility; "the pleading stage is not the time to address a potential double recovery." *Volling,* 999 F. Supp. 2d at 1006.

\* \* \*

For the reasons stated above, the Court denies Signature's motion to dismiss. Signature must answer the amended complaint by April 3, 2018. A status hearing is set for April 10, 2018.

Date: March 20, 2018

John J. Tharp, Jr.
United States District Judge